Upon review of the competent evidence of record, and finding no good grounds to receive further evidence or rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms the Opinion and Award of the Deputy Commissioner, with modification.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer.
3. Plaintiffs average weekly wage was $373.20, which yields a compensation rate of $248.81 per week.
4. Plaintiff is alleging an injury by accident or an occupational disease that occurred on or about 9 May 1996, resulting in an injury to the left arm.
5. Defendant-employer has denied liability.
6. The issue to be determined by the Commission is whether plaintiff sustained a compensable injury by accident or a compensable occupational disease.
 ***********
Based upon all of the competent evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Plaintiff was employed by defendant-employer as a wood stacker and turntable operator. As of 9 May 1996, plaintiff had worked in this capacity for three years. Plaintiffs position involved repeated lifting of stacks of wood, which would be separated and stacked according to their size. The pieces of wood were between eighteen to fifty-two inches long, and the stacks weighed between ten to fifteen pounds, depending on the number of pieces. Plaintiff picked up the pieces of wood as they came down a conveyor belt.
2. On 9 May 1996, during the performance of his duties, plaintiff experienced the onset of a tingling sensation and aching in his left elbow.
3. Plaintiff continued working for a period of time, but when the sensation did not subside, he reported it to officials at the plant. He was initially seen by Saint Pierre, the plant nurse. Ms. Pierre gave plaintiff an elbow brace and instructed him to return to the plant floor and continue working.
4. When plaintiffs pain continued, he was referred to Haywood County Hospital where he was examined by Albert J. Osbahr, M.D. Plaintiff was initially diagnosed with an elbow strain, with compression of the ulnar nerve. Dr. Osbahr released plaintiff to return to work. Plaintiff was restricted to using his right arm, provided with a splint, and prescribed medications.
5. Plaintiff continued to experience pain, swelling, and other problems with his left elbow and arm through 14 October 1996. During this period, plaintiff continued working and was seen by a number of physicians. On 14 October 1996, he was examined by Bruce I. Minkin, M.D., who diagnosed plaintiff as having sustained a subluxation (dislocation) of the ulnar nerve with a probable subluxation of the triceps. Plaintiff was later diagnosed with cubital tunnel syndrome as well.
6. On 21 November 1996, plaintiff underwent an ulnar nerve decompression surgery performed by Dr. Minkin. Plaintiff remained out of work through the period of his recovery until he was released to return to full duty work by Dr. Minkin on 15 January 1997. Plaintiff was assigned a four percent permanent partial disability rating to the left arm. Based on patient history and a description of plaintiffs duties, Dr. Minkin related plaintiffs left ulnar nerve condition to his job with defendant.
7. Pursuant to the Order of the Commission, plaintiff underwent an independent medical examination by Stephen K. Westly, M.D., on 29 January 1999. Dr. Westly reviewed the medical records of Dr. Minkin and compared them with plaintiffs description of his work activity and the onset of his symptoms. Dr. Westly found that plaintiffs job duties with defendant caused his left arm symptoms. Dr. Westly opined, and the Full Commission finds, that plaintiffs job duties as a wood stacker and turntable operator placed him at increased risk for developing an ulnar nerve condition.
8. Based upon the medical evidence, plaintiffs left ulnar nerve condition is an occupational disease which is due to causes and conditions which are characteristic of and peculiar to plaintiffs employment with defendant. Plaintiffs employment placed him at an increased risk of developing an ulnar nerve condition as compared to the general public not so employed.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiffs left ulnar nerve condition resulted from causes and conditions which are characteristic of and peculiar to plaintiffs employment, but excluding all ordinary diseases of life to which the general public is equally exposed outside of the employment. G.S.97-53 (13).
2. As a result of his compensable occupational disease, plaintiff has sustained a permanent partial impairment rating of four percent to his left arm. G.S. 97-31(13).
3. Plaintiff is entitled to have defendants pay all medical expenses incurred or to be incurred by him as a result of his occupational disease for so long as such examinations, evaluations, and treatments may reasonably be required to effect a cure, give relief, or tends to lessen plaintiffs period of disability. G.S. 97-25.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff for his four percent permanent partial impairment rating of the left arm, 9.6 weeks of compensation at the rate of $248.81 per week. This amount shall be paid to plaintiff, subject to a reasonable attorneys fee approved in this Award.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of his occupational disease for so long as such examinations, evaluations, and treatments may reasonably be required to effect a cure, give relief, or tends to lessen plaintiffs period of disability, including travel to and from the medical providers.
3. A reasonable attorneys fee in the amount of twenty-five percent of the compensation awarded for plaintiff is approved for plaintiffs counsel. The attorneys fee shall be deducted from the compensation due plaintiff and shall be paid directly to plaintiffs counsel.
4. Defendants shall pay the costs.
 S/__________________ RENE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/_________________ THOMAS J. BOLCH COMMISSIONER
S/_________________ CHRISTOPHER SCOTT COMMISSIONER